Filed 4/21/22  Gilberg v. Abir Cohen Treyzon Salo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PATRICIA GILBERG,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ABIR COHEN TREYZON SALO, LLP, et al.,<br><br>Defendants and Appellants. | C093604<br><br>(Super. Ct. No. 34201700219526CUBSGDS) |

Plaintiff Patricia Gilberg sued the law firm Abir Cohen Treyzon Salo LLP and its attorney employee Federico C. Sayre (collectively defendants), as well as the Law Offices of Sergio C. Garcia and Sergio C. Garcia, an individual, (collectively Garcia),[1] for legal malpractice, breach of contract, and breach of fiduciary duty, based on their representation of her in a personal injury action against the City of Sacramento (malpractice action).  Defendants moved to strike various allegations in plaintiff's

---

[1]     Garcia is not a party to this appeal.

1

malpractice action complaint under Code of Civil Procedure[2] section 425.16.[3]  The trial court denied the motion.  Defendants appeal; we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The record does not contain a comprehensive history of the events leading to the malpractice action.  To provide context to plaintiff's allegations in the malpractice action and defendants' anti-SLAPP motion to strike, we state the facts as plaintiff appears to believe them.

Plaintiff and her children were hit by a car while walking across a street in the City of Sacramento.  As a result, plaintiff and her children were severely injured and attributed their injuries to the City of Sacramento's negligence in failing to provide a crosswalk or otherwise mark the intersection where they crossed the street.  Plaintiff hired Garcia on October 21, 2015, to represent her and her children in a personal injury action, and defendants were associated into the case on December 1, 2015.  Plaintiff's and her children's injuries occurred on July 25, 2015, requiring them to file a claim for damages with the City of Sacramento no later than January 25, 2016, under the Government Claims Act (Gov. Code, § 810 et seq.).

Defendants did not file a government claim with the City of Sacramento as required but instead mistakenly served the *County* of Sacramento with a government claim, which was denied on December 21, 2015.  After time had expired under the Government Claims Act, defendants filed an application to present a late claim with the City of Sacramento.  The application was denied.  Defendants later filed a motion with

---

[2]     Further section references are to the Code of Civil Procedure unless otherwise indicated.

[3]     This is commonly known as an anti-SLAPP motion -- strategic lawsuit against public participation.  (See *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2.)

the trial court for leave to file a late claim. While leave was not granted as to plaintiff, defendants obtained relief from the trial court to file a late government claim on plaintiff's children's behalf. Defendants then filed a personal injury action on plaintiff's children's behalf and plaintiff served as her children's guardian ad litem. Thereafter, defendants withdrew as counsel for plaintiff's children.

Based on these apparent facts, plaintiff filed the malpractice action alleging causes of action for legal malpractice, breach of contract, and breach of fiduciary duty related to defendants' failure to present a timely claim to the City of Sacramento and effectively seek leave from the trial court for her to file a late claim.

Under each of plaintiff's causes of action, she further alleged "additional and separate breaches of professional and fiduciary obligations by Defendants . . . are also cognizable and derive from Defendant[s'] . . . conduct after realizing their initial malpractice in failing to timely file Plaintiff's government tort claim." These alleged breaches included an allegation defendants failed to properly advise plaintiff in her capacity as the guardian ad litem for her children. Specifically, plaintiff alleged defendants withdrew as counsel for her children without properly serving notice of their withdrawal or advising her of legal options. Defendants' conduct, plaintiff alleged, was done with the knowledge she was disabled and unable to adequately pursue her children's claims, which would likely result in dismissal of the children's lawsuit.

Plaintiff alleged defendants had an ulterior motive as well. Specifically, their conduct was motivated by their intent that dismissal of "the children's case could then be used offensively by Defendants to cut off **their** malpractice liability to Plaintiff based upon collateral estoppel." Indeed, plaintiff's complaint would be barred "in the event an adverse judgment is entered against Plaintiff's children . . . , in which Plaintiff was Guardian ad Litem [in an action] arising out of the same underlying facts and events which is the subject of Plaintiff's [malpractice] Complaint." To show this motivation, plaintiff pointed to defendants' alleged affirmative defenses of contributory negligence

3

and estoppel/res judicata, as well as their motion to stay the malpractice action until plaintiff's children's related personal injury lawsuit could be heard.

"Plaintiff allege[d] these facts demonstrate[d] that Defendants breached their duties to [plaintiff] by attempting to manipulate their brain-damaged client in the hope, and with the intent, this disabled, [English as a second language] non-lawyer would not be able to represent her children adequately so that their cases would be dismissed, and, in turn, Defendants could use these dismissals to have [plaintiff]'s case against them dismissed." Plaintiff requested general damages and special damages based on all the causes of action, as well as punitive damages based on the breach of fiduciary duty theories.

Defendants filed a special motion to strike under section 425.16 seeking to strike plaintiff's allegations defendants acted to undermine plaintiff's malpractice action by asserting the affirmative defenses of contributory negligence and estoppel/res judicata in their answer to the malpractice action and seeking a stay of the malpractice action until plaintiff's children's related personal injury action could be heard. Defendants did not seek to strike plaintiff's allegations of defendants' plan to sabotage her malpractice action.

The trial court denied the motion to strike, reasoning defendants' "breach(es) of their duty of loyalty are '*evidenced* by various pleadings and documents, but the wrongful acts are not the pleadings themselves. Their filings were incidental and merely evidence the malpractice and breach of fiduciary duty.' [Citation.] The allegations regarding the answer and motion to stay act as background information regarding how Defendants commenced their alleged plan to undermine Plaintiff's legal malpractice action. As alleged, Plaintiff is not seeking recovery based on Defendants' actual filing of the answer or the motion to stay."

Defendants appeal.

4

DISCUSSION

Defendants contend plaintiff's allegations pertaining to defendants' affirmative defenses and motion to stay the malpractice action refer to defendants' protected petitioning activity and thus are subject to an anti-SLAPP motion.  We disagree.

I

*Applicable Law*

"The anti-SLAPP statute 'provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.' " (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1161, quoting *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)  "The statute applies to 'cause[s] of action against a person *arising from any act of that person in furtherance of the person's right of petition or free speech* under the United States Constitution or the California Constitution in connection with a public issue.' " (*Sheley*, at p. 1161, quoting § 425.16, subd. (b)(1).)

"A special motion to strike involves a two-step process." (*Sheley v. Harrop*, *supra*, 9 Cal.App.5th at p. 1161, citing *Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 384.) " '[I]f the defendant does not meet its burden on the first step, the court should deny the motion and need not address the second step.' " (*Sheley*, at p. 1162.)

For complaints alleging mixed causes of action arising from both protected and unprotected activity, "[a]t the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them.  When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage.  If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 396.)

"The scope of the term 'cause of action' in section 425.16[, subd. ](b)(1) is evident from its statutory context.  When the Legislature declared that a 'cause of action' arising from activity furthering the rights of petition or free speech may be stricken unless the

5

plaintiff establishes a probability of prevailing, it had in mind *allegations of protected activity that are asserted as grounds for relief.* The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy. By referring to a 'cause of action against a person arising from *any act* of that person in furtherance of' the protected rights of petition and speech, the Legislature indicated that *particular* alleged acts giving rise to a claim for relief may be the object of an anti-SLAPP motion." (*Baral v. Schnitt*, *supra*, 1 Cal. 5th at p. 395.)

On appeal, we review de novo whether defendants met their initial burden of showing the protected activity gives rise to claims for relief. (*Sheley v. Harrop*, *supra*, 9 Cal.App.5th at p. 1162.)

II

*Plaintiff's Allegations Pertaining To Defendants' Affirmative*

*Defenses And Motion To Stay Do Not Give Rise To Her Claims For Relief*

Plaintiff's claims for relief are legal malpractice, breach of contract, and breach of fiduciary duty. Defendants argue plaintiff's allegations pertaining to their alleged affirmative defenses and motion to stay give rise to her claim for breach of fiduciary duty and punitive damages related to that claim, as well as her prayer for emotional damages generally.

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) In her complaint, plaintiff alleged several instances of defendants' breach of their fiduciary obligations to support her claim of breach of fiduciary duty. As relevant to defendants' anti-SLAPP motion, this included breaches related to plaintiff's status as a guardian ad litem for her children. The bases of the breach related to plaintiff's role as a guardian ad litem were alleged as "the manner of [defendants'] withdrawal, including, but not limited to, their failure to disclose that they possessed a conflict of interest, their failure to properly and personally **serve** notice on

6

Plaintiff of the motion to withdraw as her and her children's attorneys of record, and their failure to notify and inform Plaintiff as to what she should do in order to protect her, and her children's, interests." Plaintiff then detailed the way in which defendants' service was inadequate, as well as the false statements they had made to the court when seeking withdrawal as the attorney of record for plaintiff's children. These allegations give rise to plaintiff's breach of fiduciary duty cause of action by providing a required element for the cause of action -- the alleged breach. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063 (*Park*) [to determine whether a claim arises from protected activity, courts must "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability"].)

Plaintiff then alleged the reason why defendants sought to withdraw from her children's case -- so the case would eventually be dismissed for failure to prosecute. This is relevant, plaintiff alleged, because if plaintiff's children's personal injury action were dismissed, then plaintiff's related malpractice action would fail. This allegation provides a basis for plaintiff's claim of damages, i.e., defendants' breach of duty pertaining to plaintiff's status as a guardian ad litem damaged plaintiff by sabotaging her malpractice action. Defendants do not seek to strike these allegations.

Instead, defendants seek to strike plaintiff's next allegations that defendants are actively pursuing the strategy to sabotage her malpractice action by raising the affirmative defenses of contributory negligence, res judicata, and collateral estoppel in the malpractice action, as well as by filing a motion to stay the malpractice action until plaintiff's children's related action is resolved. As pled, these allegations do not supply a basis for defendant's liability for breach of fiduciary duty, i.e., defendants' breach or the resulting damage. (See *Park*, *supra*, 2 Cal.5th at p. 1060 [a "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted"].)

7

Indeed, plaintiff does not allege defendants breached their duty to her by defending against her malpractice action, by asserting their affirmative defenses, or by filing a motion to stay. Thus, plaintiff's allegations do not provide an independent theory of relief based on protected activity.

Defendants disagree and argue the allegations provide the basis for plaintiff's requested emotional distress and punitive damages because the allegations anchor plaintiff's damages to defendants' offensive use of petitioning activity. Not so.

As it pertains to emotional damages in a tort action, emotional or mental injury is an element of damages. (*Khan v. Shiley Inc*. (1990) 217 Cal.App.3d 848, 856.) As stated, the challenged allegations do not articulate plaintiff's emotional or mental injury, and thus do not provide the element of damages for the purposes of the breach of fiduciary duty cause of action.

Defendants' argument pertaining to emotional distress and punitive damages appears to concern the showing plaintiff must make to be entitled to those damages in the first place. For instance, a plaintiff is entitled to emotional damages in a legal malpractice action when the emotional injury is foreseeable considering the defendant's conduct and the plaintiff's interest that has been harmed. (*Merenda v. Superior Court* (1992) 3 Cal.App.4th 1, 10.) Similarly, a plaintiff is entitled to punitive damages upon a showing of "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice . . . ." (Civ. Code, § 3294, subd. (a).) Defendants argue plaintiff's allegations pertaining to their affirmative defenses and motion to stay must be stricken because the allegations provide a basis to show malice and oppression. We disagree for two reasons.

First, a successful anti-SLAPP motion strikes *causes of action* arising from protected activity. (§ 425.16, subd. (b)(1).) Plaintiff's entitlement to a specific type of damages falls outside the elements of a cause of action. The term "cause of action" has different meanings depending on context. "Cause of action" commonly refers to separate

counts of a complaint pleaded as "first cause of action," "second cause of action," and so on. (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 381.) "Cause of action" may also refer to a legal claim regardless of whether litigation has been filed, consisting of an injured plaintiff's primary right, the defendant's duty, and a breach of that duty that allows for a remedy. (*Ibid*.) Section 425.16, subdivision (b)(1), uses "cause of action" in a unique way to strike claims based on protected activity, regardless of the way a cause of action is described in the complaint or under the primary right theory. (*Baral*, at p. 382.) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' " (*Wilson v. Cable News Network, Inc.*, *supra*, 7 Cal.5th at p. 884; accord, *Park*, *supra*, 2 Cal.5th at p. 1063.) The elements relevant to plaintiff's entitlement to emotional distress damages and punitive damages are not elements that form the basis of liability for a cause of action.

Second, defendants' affirmative defenses and motion to stay are not in and of themselves oppressive or malicious conduct, and only become so, pursuant to plaintiff's interpretation, considering the purpose for which the affirmative defenses were alleged and the motion was filed. For this reason, plaintiff's allegations pertaining to defendants' affirmative defenses and motion to stay do not provide an *independent* basis for finding oppressive and malicious conduct, but merely provide background and context to plaintiff's allegations pertaining to emotional distress and punitive damages.

Defendants' reliance on *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539 is misplaced. In *Haight Ashbury*, the plaintiff nonprofit corporation alleged its founder breached fiduciary duties by conspiring with attorneys to give false testimony in depositions in ongoing litigation concerning the corporation's interest in a partnership. (*Id*. at pp. 1543, 1548.) The court held the anti-SLAPP statute applied because the alleged conspiratorial statements "about how to testify in upcoming depositions in a pending lawsuit" were "made in connection with an issue

9

under consideration by a judicial body." (*Id.* at p. 1548.) The court acknowledged most of the specific acts alleged as the basis for the plaintiff's claim constituted unprotected activity and were not subject to the anti-SLAPP statute but "the mere fact that there are numerically far fewer allegations of protected wrongdoing than there are allegations of nonprotected wrongdoing does not mean that the allegations of protected activity are merely *incidental* to either the causes of action of the nonprotected activity." (*Id.* at p. 1553.) The court explained the two factual bases targeting protected activity "could each be the sole and adequate basis for liability under the cause of action," and for this reason were not "merely incidental" to the numerous additional allegations targeting nonprotected activity. (*Id*. at p. 1551.) As described, plaintiff's allegations pertaining to defendants' affirmative defenses and motion to stay, when considered in isolation, do not provide an adequate basis for relief, and thus are incidental.

Defendants' reliance on *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 is similarly misplaced. In *Peregrine Funding*, the plaintiffs alleged a law firm committed malpractice and aided and abetted a breach of fiduciary duty, based on the law firm's legal advice, its efforts on behalf of its clients to block a regulatory agency investigation, and assisting its client's exit from a Ponzi scheme. (*Id.* at p. 668.) The law firm filed a motion to strike, arguing the plaintiffs' claims arose from the firm's protected speech and litigation activity. (*Ibid*.) As to the representation of the clients in the regulatory action, some of the law firm's conduct (e.g., failing to disclose conflicts of interest and turn over client documents) was not subject to striking under section 425.16, but other aspects of the law firm's conduct was in furtherance of its exercise of the constitutional right of petition (e.g., opposing the regulatory agency's efforts to obtain restraining orders and appoint a receiver, as well as stopping a deposition), as litigation tactics to benefit its client in an ongoing lawsuit. (*Peregrine Funding*, *supra*, at pp. 670-672.) The court decided those allegations were subject to section 425.16 because the allegations involved "classic petitioning activity"

and the plaintiffs alleged substantial losses due to the law firm's conduct in delaying resolution of the regulatory agency investigation and lawsuit. (*Peregrine Funding*, at p. 673.) Here, and unlike the plaintiffs in *Peregrine Funding*, plaintiff does not base her allegations of breach or damages on defendants' petitioning activity, but on their withdrawal from representing her children in their lawsuit for the purpose of sabotaging her malpractice action. How defendants accomplished the sabotage is not the basis of plaintiff's claim.

To the extent defendants rely on the chilling effect of plaintiff's allegations and the court's ruling to demonstrate the propriety of striking the challenged allegations, the contention is without merit. Whether a plaintiff's lawsuit intended to chill or actually did chill the defendant's conduct is not relevant to whether the lawsuit arises from protected activity under the anti-SLAPP statute. (*Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1399.)

DISPOSITION

The order denying defendants' special motion to strike is affirmed. Defendants shall pay plaintiff's costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


/s/_____
Robie, Acting P. J.

We concur:


/s/_____
Duarte, J.


/s/_____
Renner, J.

11